UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES of AMERICA, )
)
Plaintiff, )
and )
THE STATE OF MINNESOTA, )
)
Plaintiff-Intervener, )
)
v. ) Civil Action
) No. 00-CV-2756
KOCH PETROLEUM GROUP, L.P. )
)
Defendant. )
)

**MEMORANDUM IN SUPPORT OF UNOPPOSED**
**MOTION TO ENTER FIRST AMENDMENT TO CONSENT DECREE**

The United States, on behalf of the Environmental Protection Agency ("EPA"), moves for entry of the proposed First Amendment to Consent Decree lodged with this Court on June 23, 2006, in the above-styled action. This is an environmental settlement with Koch Petroleum Group, L.P., now referred to as Flint Hills Resources, LP ("FHR"), a major petroleum refiner with operations in Pine Bend, Minnesota, and at two facilities in Corpus Christi, Texas. This was the first of several settlements under EPA's enforcement initiative, targeting non-compliance in the petroleum refining industry.

The Court entered the Consent Decree on April 25, 2001. On June 23, 2006, the United States lodged the First Amendment to Consent Decree with the Court. Pursuant to 28 C.F.R.,

Section 50.7, notice of lodging of the First Amendment to Consent Decree was published in the Federal Register and public comments were solicited. (See Federal Register, Vol. 71, No.129, pp. 38422-38423, July 6, 2006). No comments were received, thus entry of this proposed Amendment is unopposed. Accordingly, the United States respectfully requests that the Court sign and enter this First Amendment to Consent Decree.

## I. BACKGROUND

The proposed First Amendment resolves several implementation issues that have arisen under the original Consent Decree. FHR brought the issues to the attention of the Plaintiffs, as discussed more fully below. Subsequently, the parties entered into negotiations to resolve the issues in a manner that is protective of human health and the environment, achieves the fundamental goals of the original settlement, and avoids litigation. This proposed Amendment contains the following three material modifications to the Consent Decree:

A. Schedule for NOx Catalyst Additive Studies. The Amendment allows FHR an additional six months to conduct catalyst studies at the Pine Bend facility and to propose a final nitrogen oxide ("NOx") control scheme for reduction of emissions from the fluidized catalytic cracking unit ("FCCU"). During this time, FHR has agreed to operate under an initial NOx emission limit which is not currently required in the Consent Decree.

The Plaintiffs have learned in implementing the refinery Consent Decrees that by extending the time for the catalyst demonstrations, the refineries are able to test several additives to determine which will achieve the greatest emission reductions at a particular FCCU. EPA has determined here that FHR's continuation of the NOx catalyst additive study will ensure that the final emission limit is well-supported by accurate data, and will result in lower NOx emissions

during the "initial" testing, and more stringent final emission limits. The proposed Amendment also extends the corresponding provisions which address reporting and operation of continuous emission monitoring systems ("CEMS") to coincide with the additional time provided to conduct the tests.

B. Leaks into Non-Contact Cooling Tower Systems. The Amendment establishes a work practice method to address leaks of process fluids into the non-contact, recirculating cooling tower systems pursuant to the Benzene Waste Operations NESHAP, 40 C.F.R. Part 61, Subpart FF. The language of the regulation does not specifically address these types of leaks, however EPA has made a determination that the leak of process fluid into non-contact cooling tower water may be covered by the Benzene Waste NESHAP.[1] FHR has proposed a method to monitor, record and report any leaks into the non-contact cooling tower systems. The Plaintiffs have reviewed the proposed method, and determined that for FHR's situation, the method in the Amendment offers an acceptable work practice to minimize the emissions from cooling towers that may result from leaks of process fluids into the non-contact cooling tower systems at its facility.

C. Control of Heater and Boiler Emissions. The Amendment requires FHR to install specific control technology and accept emission limits for heaters at Corpus Christi and Pine Bend. In exchange, we have agreed to allow a two-year delay for installation of controls on two boilers at Corpus Christi. The Consent Decree originally required FHR to install next generation ultra low-NOx burners on these two heaters unless FHR could demonstrate that the burners are

---

[1] See Letter from John R. Hepola, EPA, Chief, Air Toxics and Inspection Coordination Branch, to David Savage, Baker Botts, LLP, dated April 12, 2001.

technically and economically infeasible. FHR had represented that the next generation technology is feasible on nearly all its heaters. However, heaters at Corpus Christi (31B1A) and Pine Bend (37H3/4/5) have space limitations that FHR did not anticipate and which call into question the technical and/or economic feasibility of the installation of next generation technology on these units. In lieu of claiming a complete exemption for these heaters pursuant to Paragraph 15 of the Consent Decree, which would allow the units to go uncontrolled, FHR has agreed to install an alternative (current) technology and take an emission limit of 0.45 lbs. NOx/MMBtu on these heaters. [2] In return, the proposed Amendment extends the installation deadline for two other boilers in the system to coincide with FHR's turnaround schedule for these units. Paragraph 16 provides FHR with two additional years, until December 31, 2008, to install control technology on Corpus Christi boilers E10B8 and E10B9. EPA has determined that any additional emissions from the delayed installation of controls at these two boilers will be offset by emission limits agreed to at the Corpus Christi and Pine Bend heaters.

D. Non-Material Changes. The proposed Amendment also includes non-material changes to the Notice and Modification requirements of the Consent Decree, Paragraphs 148 and 153, respectively. The new language makes this Decree consistent with others in the industry as to deadlines for submission of flaring reports, treatment of start-up, shutdown and malfunction emissions in short-term emission limits, and reduces the general reporting requirements from quarterly to semi-annually. Lastly, changes to Paragraph 153, pertaining to the procedure for future modifications to the Consent Decree, specify that material modifications must be agreed to

---

[2] The 0.45 lbs. NOx/MMBtu limit is roughly equivalent to the reductions achievable with ultra low-NOx burner technology.

in writing by the parties and entered by the Court in order to be effective. These changes will ensure that FHR's performance of the settlement requirements continues and that the reduction in harmful air emissions contemplated by the Consent Decree is fully realized.

## II. ARGUMENT

**The Amendment is Fair, Reasonable and Consistent with the Clean Air Act.**

The standard applied by courts in reviewing a settlement is whether the proposed settlement fairly and reasonably resolves the controversy in a manner consistent with the public interest. Citizens for a Better Environment v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983), cert. denied, 467 U.S. 1219 (1984); United States v. Oregon, 913 F.2d 576, 580 (9th Cir. 1990) (before approving consent decree, district court must be satisfied that Decree is fundamentally fair, adequate and reasonable, and in conformity with applicable laws), cert. denied, 501 U.S. 1250 (1991); United States v. St. Louis Sewer Dist., 952 F.2d 1040, 1044 (8th Cir. 1992); accord United States v. Microsoft Corp., 56 F.3d 1448, 1458 (D.C. Cir. 1995) (standard for review of Sherman Act settlement pursuant to the Tunney Act, 15 U.S.C. § 16(e)); Environmental Technology Council v. EPA, 41 Env. Rep. Cas. 1218, 1220-21 (D.D.C. 1995). In making its determination regarding a proposed settlement, the court should "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." SEC v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984).

Approval of a settlement is a judicial act that is committed to the informed discretion of the trial court. Donovan v. Robbins, 752 F.2d 1170, 1176-77 (7th Cir. 1985); United States v. Jones & Laughlin Steel Corp., 804 F.2d 348, 351 (6th Cir. 1986). The Court, however, does not

Jones & Laughlin Steel Corp., 804 F.2d 348, 351 (6th Cir. 1986). The Court, however, does not have the power to modify a settlement; it may only accept or reject the terms to which the parties have agreed. United States v. Akzo Coatings of America, 949 F.2d 1409, 1435 (6th Cir. 1991); Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 630 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983).

In general, public policy strongly favors settlements of disputes without litigation. Donovan v. Robbins, 752 F.2d at 1177; Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir.), cert. denied, 429 U.S. 862 (1976). Settlements conserve the resources of the courts, the litigants, and the taxpayers and "should . . . be upheld whenever equitable and policy considerations so permit." Allied Witan, 531 F.2d at 1372; E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 888-89 (7th Cir. 1985), cert. denied, 478 U.S. 1004 (1986).

Broad deference should be afforded to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement. In re Cuyahoga Equip. Corp., 980 F.2d 110, 118 (2nd Cir. 1992), citing Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-44 (1984). See also United States v. Vertac Chem. Corp., 756 F. Supp. 1215, 1218-19 (E.D. Ark. 1991), aff'd sub nom. United States v. Hercules, Inc., 961 F.2d 796 (8th Cir. 1992); United States v. Cannons Eng'g, 899 F.2d 79, 87 (1st Cir. 1990).

As demonstrated below, the proposed First Amendment to Consent Decree meets the three-part test for district court approval: it is fair, reasonable, and in the public interest. Accordingly, the Court should sign and enter the Amendment.

**1. The Amendment is Procedurally and Substantively Fair.**

To determine whether a proposed settlement is procedurally and substantively fair, courts

look to factors such as the good-faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved. Hooker Chem. & Plastics Corp., 540 F. Supp. at 1072.

In this case, the settlement embodied in the Amendment is the product of procedural fairness, exemplified by a process that began with EPA's investigation of the petroleum refinery industry, continued with the preparation of EPA's enforcement case against FHR, and ended with the development of an injunctive relief program that addresses the violations alleged and furthers the objectives of the laws on which the Complaints were based. The touchstone of procedural fairness is good-faith, arms-length bargaining among the parties. In order to resolve potential implementation issues arising under the Consent Decree, the parties engaged in vigorous and extensive negotiations. The Amendment reflects the parties' careful and informed assessment of the relative merits of each other's claims while taking into consideration the costs and risks associated with re-opening the Decree. The Amendment also embodies a measure of compromise on both sides, but easily meets the standards for substantive fairness, as required for approval by this Court and conforms with the scope of FHR's obligations under the settlement.

As with any fair settlement, the parties gain the benefit of immediate resolution of the litigation and some measure of vindication for their respective positions, while foregoing the opportunity to achieve an unmitigated victory. Hiram Walker & Sons Inc., 768 F.2d. at 889.

In evaluating a settlement under remedial statutes, such as the Clean Air Act, fairness of the proposed Amendment may also be considered in light of its effect on the public. In this instance, many communities located within hundreds of miles of these FHR facilities will continue to benefit by installation of additional air pollution controls and improved work

adequately addressed in any settlement under the CAA and that these facilities will comply with all applicable laws. The proposed Amendment meets these ongoing expectations under the settlement, and exceeds both the procedural and the substantive "fairness" standards required for entry. Further, expeditious steps toward compliance will begin immediately, and will not be delayed by litigation of these issues.

**2. The Amendment is Reasonable.**

The "reasonableness" of the Amendment may be determined in light of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. U.S. v. Telluride Company, 849 F.Supp. 1400, 1403 (D.Col. 1994). Applying the Telluride standard here, the Court should find that this Amendment represents a reasonable settlement of the implementation issues. As discussed above, the Amendment is more than technically adequate in that it contains specific, tailored relief that addresses the compliance deficiencies alleged in the Plaintiffs' Complaints and accomplishes broad relief in furtherance of the laws upon which the Complaints were based. It obtains this compliance in a far shorter time than if the parties had litigated the implementation disputes.

**3. The Amendment Is In the Public Interest and Is Consistent with Applicable Environmental Goals.**

The Amendment meets the statutory goals of protection of human health and the environment as set forth in the Clean Air Act. One of the primary purposes of the Clean Air Act is to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1). The role of the Court in reviewing an environmental settlement is to determine "whether the Consent Decree comports

reviewing an environmental settlement is to determine "whether the Consent Decree comports with the goals of Congress." Sierra Club v. COCA-COLA Corp., 673 F. Supp. 1555, 1556 (M.D. Fla. 1987). This Amendment with FHR furthers the statutory goals of the CAA and thus serves the public interest. The Amendment achieves, without litigation delays or costs, the environmental benefits contemplated by the original Decree.

In summary, the proposed Amendment allows FHR additional time to conduct studies of various nitrogen oxide ("NOx") reducing catalysts and to decide on the final NOx control scheme for the fluidized catalytic cracking unit ("FCCU") at the Pine Bend, Minnesota, facility. Second, the Amendment establishes a process to address any leaks of process fluids into the non-contact, recirculating cooling tower systems as required by the National Emission Standard for Benzene Waste Operations, 40 C.F.R. Part 61, Subpart FF. Third, and finally, the Amendment exempts two heaters in the FHR system from the application of current or next generation ultra low-NOx burners, but requires FHR to install specific control technology and accept restrictive emission limits for these two heaters.

III. Conclusion

The First Amendment to Consent Decree presented to this Court for entry is a fair and just resolution to the several implementation issues that have arisen under this complex, multi-statutory, multi-facility settlement involving FHR's three petroleum refineries. The proposed changes are in the interest of the public, will ensure the continued implementation of the settlement, and further FHR's ongoing compliance with the CAA and applicable state and federal regulations. Entry of the Decree is supported by a long and unbroken line of case law which requires deference to EPA's discretion in interpreting and applying highly technical regulations,

and to the sophistication of the parties who negotiated in good faith to achieve an expeditious resolution of these implementation issues. For all the reasons set forth above, this Court should sign and enter the proposed First Amendment to Consent Decree.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

By: [signature]

DIANNE SHAWLEY
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-0096

THOMAS B. HEFFILFINGER
United States Attorney

FREIDRICH A. P. SIEKERT
Assistant United States Attorney
Attorney ID No. 142013
District of Minnesota
U.S. Courthouse
300 S. 4th Street
Suite 600
Minneapolis, MN 35415